Andrew Rozynski, Esq. (NY# 5054465)
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
arozynski@eandblaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ANITA DEHALT, | |
| Plaintiff, | **Civ. No. 19-3408** |
| v. | **COMPLAINT** |
| FAIRVIEW NURSING CARE CENTER, INC. Defendant. | **JURY TRIAL DEMANDED** |

---

Plaintiff, ANITA DEHALT, by and through her undersigned counsel, EISENBERG & BAUM, LLP, hereby files this amended Complaint against Defendant, FAIRVIEW NURSING CARE CENTER, INC. and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff ANITA DEHALT is profoundly deaf and communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. Her deafness impacted her ability to learn and acquire language from an early age, and as a result, she has difficulty communicating in English.[1] American Sign Language

---

[1] Due to physical, environmental, and pedagogical factors, many deaf individuals have difficulty acquiring spoken languages such as English. Indeed, the median reading level of deaf high school

1

itself is not directly analogous to the English Language and is more akin to a foreign language.[2] Plaintiff is likewise unable to effectively communicate by reading lips.[3] Defendant FAIRVIEW NURSING CARE CENTER, INC. is a 24-hour rehab center and nursing home facility in Queens, NY which provides a variety of services such as IV therapy, wound care, cardiac rehabilitation, post-surgery care, nursing care, joint replacement care and neurological treatments. Defendant also provides outpatient rehab services, including physical, occupational, and speech therapy.

2. Defendant both hindered and prevented Plaintiff from benefitting from their services, and discriminated against Plaintiff unlawfully, on the basis of Plaintiff's disability of deafness by refusing to provide the ASL interpreters that Plaintiff required to understand and participate in Anita Dehalt's medical care during her post-operation rehabilitation in Defendant's facilities. This denial was in spite of Plaintiff's request for an interpreter.

3. Based on Plaintiff's allegations herein, it is evident that Defendant has failed to implement policies, procedures, and practices respecting the civil rights and communication needs of deaf individuals. Plaintiff brings this lawsuit to compel Defendant to cease unlawful

---

graduates is fourth grade. This is because many deaf people acquire English as their second language (after ASL or another form of sign language) well past the critical developmental period of language acquisition.

[2] ASL is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1105 (9th Cir. 2010). "In many cases, there is no one-to-one correspondence between signs in ASL and words in the English language." *Id.*

[3] Lip-reading, or the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct communication through a qualified sign language interpreter. Only a small number of spoken sounds in aural language are visible, and many of those words appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language as English and ASL are distinct languages with disparate grammatical structures.

discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity for deaf individuals to participate in and benefit from Defendant's health care services.

4. Plaintiff brings this action seeking declaratory, injunctive, and equitable relief; compensatory damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination against Plaintiff on the basis of her disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; the New York Human Rights Law ("NYHRL"), Article 15 of the N.Y. Executive Law §§ 290, et seq.; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 et. seq.; and Article 28 of the New York Public Health Law § 2801 et seq. ("NYPHL").

## THE PARTIES

5. Plaintiff ANITA DEHALT brings this action as an individual residing in Forest Hills, New York. Plaintiff is a profoundly deaf individual who has limited English proficiency and who primarily communicates in American Sign Language. Plaintiff is substantially limited in the major life activities of hearing and speaking and is an individual with a disability within the meaning of federal and state civil rights laws.

6. Defendant FAIRVIEW NURSING CARE CENTER, INC, is a corporation with a corporate address at 69-70 Grand Central Pkwy Forest Hills, NY 11375. Upon information and belief, Defendant is the recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements.

## JURISDICTION & VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under the laws of the United States, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state and local laws.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of this district, because Defendant has sufficient contacts with this District to subject it to personal jurisdiction and had those contacts at the time this action is commenced, and the acts and omissions giving rise to this Complaint occurred within this District.

**STATEMENT OF FACTS**

9. Plaintiff Anita Dehalt (hereinafter "Plaintiff" or "Ms. Dehalt" is a profoundly deaf individual who communicates primarily in American Sign Language (ASL).

10. Plaintiff has limited proficiency in English, cannot effectively communicate by reading lips, and requires auxiliary aids and services to communicate effectively in a medical setting.

11. On or around October 23, 2018 Plaintiff entered Fairview Rehab & Nursing Home after surgery and a biopsy on her bladder and subsequent complications from this surgery.

12. Plaintiff had her surgery at Long Island Jewish Medical Center prior to her admittance at Defendant's facility.

13. Before her discharge from Long Island Jewish Medical Center, it was determined that Ms. Dehalt required four additional days of care at an outside nursing home for additional antibiotics and care

14. Ms. Dehalt's case manager at the hospital searched for short-term care rehab facilities that would have availability for Ms. Dehalt. Her case manager was only able to find

facility with availability, which was Defendant's Facility.

15. The case manager informed Defendant's that Plaintiff was deaf and required an interpreter; however, the case manager was informed that no interpreter would be provided.

16. Plaintiff, in immediate need of medical care agreed to enter Defendant's facility.

17. Upon arrival at Defendant's facility, the director of Defendant's facility asked Plaintiff how well Plaintiff could communicate, and when Plaintiff's daughter attempted to request an interpreter, she was told, that no interpreter would be provided, and the only way Plaintiff would be admitted would be if her daughter agreed to come in every day to interpreter for Plaintiff.

18. Plaintiff's daughter was further required to sign a form stating she would be interpreting every day for her mother and that Plaintiff did not require an interpreter.

19. Plaintiff and her daughter reluctantly agreed to the stipulations of admission due to the fact that Plaintiff still needed four days of care and there was nowhere else to go.

20. Plaintiff's daughter went to visit her mother and interpret every day for approximately seven (7) hours a day.

21. The director of admissions, Angelica (last name unknown), told Plaintiff's daughter that "I'm sick and tired of my boss discriminating against deaf people. He hates deaf people." Nonetheless, Angelica admitted Plaintiff into the facility.

22. During her stay Plaintiff was repeatedly ignored by Defendant's staff or told to "wait a few minutes" and no staff would return, despite Plaintiff using the call button in an attempt to get assistance.

23. After 4 days of treatment, Plaintiff's daughter attempted to check Plaintiff out and was told that she needed more treatment and rehab, even though the hospital told Plaintiff only

four days were needed.

24. Plaintiff's daughter was told by an Alana (last name unknown), a member of Defendant's staff, that this is routine practice of the facility in order to charge higher rates to the insurance company. After about two weeks at Defendant's facility, Plaintiff's daughter finally checked Plaintiff out "against medical advice."

25. Due to the lack of interpreters or other auxiliary aids or services Ms. Dehalt was not able to meaningfully engage in treatment. Additionally, Ms. Dehalt was unable to communicate any of her questions, concerns, or needs regarding her treatment to hospital staff due to the lack of interpreters or other auxiliary aids or services.

26. In most instances, effective communication could not have taken place between Plaintiff and Defendant's staff without the aid of a qualified ASL interpreter.

27. Indeed, as a result of Defendant's failure to provide effective auxiliary aids and services, Plaintiff did not understand the purposes of the treatments being provided; the common risks and/or benefits of those treatments; the common risks, side effects, and benefits of medications given; the specific dosage instructions for medications given; the existence of any alternative treatments; the approximate length of care; the potential side effects of stopping treatment; the details of any aftercare or discharge instructions; etc.

28. Defendant's discrimination against Plaintiff, and Plaintiff's resulting lack of understanding of her medical care, caused Plaintiff to suffer humiliation, anger, frustration, feelings of neglect, isolation, stress, anxiety, and emotional distress.

29. Defendant and Defendant's staff knew that Plaintiff is deaf and were aware that Plaintiff made a request for interpreters.

30. Defendant also knew or should have known of their obligation as a health care

provider under the ADA, the RA, and their equivalents to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including but not limited to the provision of ASL interpreters to ensure effective communication with deaf persons.

31. Defendant knew or should have known of their obligation as a health care provider under the ADA, the RA, and their equivalents that they are not to rely upon family members to interpreter in a medical setting.

32. Defendant and their staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, feelings of neglect and isolation, humiliation, and/or emotional distress than a hearing person would be expected to experience.

33. Nonetheless, Defendant prevented Plaintiff from benefitting from its services by failing to provide the ASL interpreters necessary for her participation and care.

34. In doing so, Defendant intentionally discriminated against Plaintiff and acted with deliberate indifference to her federally protected rights.

35. Defendant's wrongful and intentional discrimination against Plaintiff on the basis of her disability is reflected by Defendant's failure to train employees and promulgate policies of non-discrimination against deaf individuals.

36. As a result of Defendant's failure to ensure effective communication with Plaintiff, Plaintiff received services that were objectively substandard and that were inferior to those provided to patients who are hearing.

37. Plaintiff is entitled to equal access to services offered by Defendant as are enjoyed by non-disabled persons.

# CLAIM I: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

38. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

39. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. has been in full force and effect and has applied to Defendant's conduct.

40. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

41. Defendant owns, leases, and/or operates a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

42. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43. Title III of the ADA defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

44. Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities" 28 C.F.R. §

36.303(c).

47. The ADA and its promulgating regulations specifically instruct that it is prohibited to "require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 36.303(c)(2).

46. Defendant discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

47. Defendant failed to implement policies, procedures, and training of staff necessary to ensure compliance with Title III of the ADA and its implementing regulations.

48. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

**CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

49. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

50. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

51. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

52. At all times relevant to this action, Defendant has been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

53. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

54. The Rehabilitation Act extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

55. Defendant discriminated against Plaintiff, on the basis of disability, in violation of the Rehabilitation Act and its implementing regulations.

56. Defendant failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Rehabilitation Act and its implementing regulations.

57. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

**CLAIM III: VIOLATIONS OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT**

58. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

59. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and has applied to the Defendant's conduct.

60. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

61. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

10

62. At all times relevant to this action, Defendant received federal financial assistance, including Medicare and/or Medicaid reimbursements, and have been principally engaged in the business of providing health care. Therefore, Defendant are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

63. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

64. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take reasonable steps to provide meaningful access to each individual with limited English proficiency eligible to be served or likely to be encountered in its health programs and activities." 45 C.F.R. § 92.201.

65. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A covered entity shall offer a qualified interpreter to an individual with limited English proficiency when oral interpretation is a reasonable step to provide meaningful access for that individual with limited English proficiency; and (2) A covered entity shall use a qualified translator when translating written content in paper or electronic form." 45 C.F.R. § 92.201(d).

66. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "[a] covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities." 45 C.F.R.§ 92.202(a).

67. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provide that "(1) A [covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 45 C.F.R. § 92.202(a); 28 C.F.R. § 35.160(b).

68. Federal regulations implementing Section 1557 of the Patient Protection and Affordable Care Act provides that "[n]othing in this part shall be construed to invalidate or limit the rights, remedies, procedures, or legal standards available to individuals under Title VI of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, the Architectural Barriers Act of 1968, Title IX of the Education Amendments of 1972, Sections 504 or 508 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, or other Federal laws or to supersede State or local laws that provide additional protections against discrimination on any basis described in § 92.1." 45 C.F.R. § 92.3(b).

69. As set forth above, Defendant discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

70. The ADA and its promulgating regulations specifically instruct that it is

prohibited to "[r]ely on an adult accompanying an individual with limited English proficiency to interpret or facilitate communication" §92.201(e)(2)

71. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

72. Defendant failed to implement policies, procedures, and training of staff necessary to ensure compliance with the Patient Protection and Affordable Care Act.

73. Plaintiff is therefore entitled to injunctive relief; attorneys' fees, costs, and disbursements; and compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

## CLAIM IV: VIOLATIONS OF THE NEW YORK HUMAN RIGHTS LAW

74. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

75. At all times relevant to this action, the New York Human Rights Law, Article 15 of the New York Executive Law § 290, et seq. has been in full force and effect and has applied to Defendant's conduct.

76. At all times relevant to this action, Plaintiff has had substantial impairments to the major life activities of hearing and speaking and has been a qualified individual with a disability within the meaning of New York Executive Law § 292(21).

77. At all times relevant to this action, Defendant's facilities have been places of public accommodation within the meaning of N.Y. Exec. L. § 292(9).

78. Pursuant to N.Y. Exec. L. § 296(2)(a), "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or

employee of any place of public accommodation, because of the . . . disability . . . of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . . to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of . . . disability . . . or that the patronage or custom thereat of any person of or purporting to . . . having a disability is unwelcome, objectionable or not acceptable, desired or solicited."

79. Pursuant to N.Y. Exec. L. § 296(2)(c), discrimination includes "refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities."

80. As set forth above, Defendant discriminated against Plaintiff, on the basis of her disability, in violation of the NYHRL.

81. The NYHRL extends a cause of action and relief to "any person claiming to be aggrieved" by an unlawful discriminatory practice. N.Y. Exec. L. § 297(9).

82. Plaintiff is therefore entitled to injunctive relief, as well as compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged pursuant to N.Y. Exec. L. § 297(9).

**CLAIM V: VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW**

83. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

84. At all times relevant to this action, the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-101 et. seq., has been in full force and effect and has applied to Defendant's conduct.

85. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking, and has therefore been a qualified individual with a disability within the meaning of N.Y.C. Admin. Code § 8-102(16).

86. At all times relevant to this action, Defendant operated public accommodations within the meaning of N.Y.C. Admin. Code § 8-102(9), and have been covered entities within the meaning of N.Y.C. Admin. Code §§ 8-102(1) & (17).

87. Pursuant to N.Y.C. Admin. Code § 8-107(4), it shall be unlawful discrimination for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

88. Pursuant to N.Y.C. Admin. Code § 8-107(15)(a), a covered entity "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

89. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability.

90. As set forth above, Defendant discriminated against Plaintiff on the basis of disability, in violation of the NYCHRL.

91. As set forth above, absent injunctive relief there is a clear risk that Defendant's actions will continue to reoccur with Plaintiff and/or other deaf persons or companions.

92. The NYCHRL extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his or her disability. N.Y.C. Admin.

Code § 8-502(a).

93. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, pursuant to N.Y.C. Admin. Code § 8-502(a).

94. Plaintiff is further entitled to an award of punitive damages to rectify and deter Defendants' discriminatory conduct as hereinbefore alleged, pursuant to N.Y.C. Admin. Code § 8-502(a).

95. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**CLAIM V: VIOLATIONS OF THE NEW YORK PUBLIC HEALTH LAW**

96. Plaintiff repeats and re-alleges all preceding paragraphs in support of this claim.

97. At all times relevant to this action, Article 28 of the New York Public Health Law Human Rights Law, § 2801 et seq. has been in full force and effect and has applied to Defendant's conduct.

98. At all times relevant to this action, Defendant's facility has been a "nursing home" and/or a "residential health care facility" within the meaning of N.Y. Pub. Health L. § 2801(2)-(3).

99. Pursuant to N.Y. Pub. Health L. § 2801-d, "Any residential health care facility that deprives any patient of said facility of any right or benefit, as hereinafter defined, shall be liable to said patient for injuries suffered as a result of said deprivation, except as hereinafter provided. For purposes of this section a ["]right or benefit["] of a patient of a residential health care facility shall mean any right or benefit created or established for the well-being of the patient by the terms of any contract, by any state statute, code, rule or regulation or by any

16

applicable federal statute, code, rule or regulation . . . ["]injury["] shall include, but not be limited to, physical harm to a patient; emotional harm to a patient; death of a patient; and financial loss to a patient."

100. Pursuant to N.Y. Pub. Health L. 2803-c(2), "every nursing home and facility providing health related service . . . shall adopt and make public a statement of the rights and responsibilities of the patients who are receiving care in such facilities, and shall treat such patients in accordance with the provisions of such statement."

101. Pursuant to N.Y. Pub. Health L. 2803-c(3)(e), "[e]very patient shall have the right to receive adequate and appropriate medical care, to be fully informed of his or her medical condition and proposed treatment unless medically contraindicated, and to refuse medication and treatment after being fully informed of and understanding the consequences of such actions."

102. As set forth above, Defendant denied Plaintiff's rights under federal and state laws, including Plaintiff's right to be fully informed of his medical condition and treatment.

103. N.Y. Pub. Health L. § 2801-d(1), extends a private right of action and relief to a patient who has been deprived of "any right or benefit" at "any residential health care facility."

104. Plaintiff is therefore entitled to injunctive relief, as well as compensatory damages including punitive damages and attorney's fees for the injuries and loss sustained as a result of Defendant's conduct as hereinbefore alleged pursuant to N.Y. Pub. Health L. § 2801-d

## **PRAYER FOR RELEIF**

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of

1973, 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116; the New York Human Rights Law, Article 15 of the N.Y. Executive Law §§ 290, et seq.; the New York City Human Rights Law , N.Y.C. Admin. Code §§ 8-101 et. seq.; and Article 28 of the New York Public Health Law § 2801 et seq.

b. Issue an injunction forbidding Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals, or their companions, meaningful access to and full and equal enjoyment of Defendants' facilities, services, or programs;

c. Issue an injunction ordering Defendants:

  i. to develop, implement, promulgate, and train staff to comply with a policy that ensures when deaf or hard of hearing individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable if necessary for effective communication;

  ii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly marked and worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

  iii. to develop, implement, promulgate, and train staff to comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate and effective method under the circumstances,;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to train all their employees, staffs, and other agents on a regular basis about how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals;

vi. to create and maintain a list of qualified sign language interpreters and ensure availability of such interpreters at any time of day or night;

vii. to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, the RA, the ACA, NYHRL, NYCHRL, NYPHL.

d. Award to Plaintiff:

i. Compensatory damages Compensatory damages at a minimum of 25% of the daily per-patient rate of payment for each day that the injury existed, for all physical, emotional and financial harm to the Plaintiff pursuant to the New York Public Health Law § 2801-d, in addition to compensatory damages

pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, the New York City Human Rights Law, and the New York Human Rights Law.

ii. Punitive damages pursuant to the New York City Human Rights Law and the New York Public Health Law § 2801-d(2).

iii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Patient Protection and Affordable Care Act, and the New York City Human Rights Law; and the New York Public Health Law.

iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. Any and all other relief that this Court finds necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Dated: June 7, 2019

Respectfully submitted,
By:

Andrew Rozynski, Esq.
(NY# 5054465)
arozynski@eandblaw.com
EISENBERG & BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
212-353-8700 (tel.)
212-353-1708 (fax)
*Attorneys for Plaintiff*